CHARLES D, SANFORD

*v.*

SAMUEL J. EMORY'S ADMINISTRATOR.

1. TIME — *when material in performing a contract* — *of specific performance.* Where a party sells lands, agreeing to convey on the happening of a certain event, and the purchase-money is not to be paid until the conveyance is made, in an action at law to recover the purchase-money, time in the making and tendering of the deed becomes material.

2. To put the purchaser in default in regard to the non-payment of the price, the vendor should, within a reasonable time after the event, on the happening of which he agreed to convey, tender the deed.

3. In this case, by the terms of the contract, the deed was to be made on the 18th of November, 1856; but it was not tendered by the vendor until the 30th of January, 1859. *Held,* that after such delay in tendering the deed, the vendor could not compel a specific performance.

4. So, to enable the vendee in such case to compel a specific performance, he should, in a reasonable time after he was entitled to the deed by the terms of the contract, notify the vendor that he was ready to comply with the contract, on the execution of the deed.

5. RESCISSION OF CONTRACT — *what constitutes, and herein of the necessity of giving notice.* The rule is, when one party fails in performing a contract at the proper time, the other, if he means to rescind it, should give a clear notice of his intention.

6. So, it does not follow, merely from the fact that neither party to a contract is in a position to compel a specific performance, that it is thereby rescinded.

7. SAME — *property must be restored.* And where a purchaser of land under an executory contract goes into possession, it seems, on the authority of the case of *Gehr* v. *Hagerman,* 26 Ill. 438, that, before he can rescind by reason of non-performance on the part of the vendor, he is bound to restore the property, or offer to restore it.

8. He would have no right to claim all the benefits of the contract, and at the same time insist it is rescinded. The rescission should be mutual, so as to discharge the vendor as well as the vendee.

WRIT OF ERROR to the Circuit Court of Whiteside county; the Hon. W. W. HEATON, Judge, presiding.

On the 14th of February, 1856, Samuel J. Emory purchased from Charles D. Sanford, certain town lots in the town of Round Grove, for the sum of two hundred dollars, to be paid in certain installments. The contract was reduced to writing, in which it was stipulated when Sanford was to convey the lots, and at what times the money should be paid.

Emory having died without making payment, Sanford filed the written agreement in the county court of Whiteside county as a claim against the estate of Emory. On a hearing, the claim was disallowed; an appeal was taken to the Circuit Court, where the claim was also disallowed. Thereupon, Sanford sued out this writ of error. The facts of the case are sufficiently presented in the opinion of the court.

The principal question arising in the case is, when a right accrues to rescind a contract, and of the manner in which the right may be asserted.

Mr. JAMES McCOY, for the plaintiff in error, presented the following points and authorities:

1. The agreement upon which this suit was brought is a valid, subsisting contract, and no valid contract can be rescinded by operation of law, but the party who wishes to rescind such contract must do some act to produce that effect. *Caney, adm'r, etc.* v. *Newberry, adm'x, etc.*, 24 Ill. 505, 506; *Mason* v. *Caldwell*, 5 Gilm. 196; *Christman* v. *Miller*, 21 Ill. 227; *Duncan et al.* v. *Charles*, 4 Scam. 563; Sug. on Vendors, 259; P. Wms. 191; *Moore* v. *Smith*, 24 Ill. 512.

2. A party can only rescind a contract on return of the property purchased, or on offer to return it; and this right can only be exercised after having performed, or offered to perform,

on the part of the party who seeks to rescind. *Gehr* v. *Hagerman*, 26 Ill. 438, 441; *Buchanan* v. *Hornly*, 12 id. 338; *Jennings* v. *Gage et al.*, 13 id. 613; *Kinney et al.* v. *Turner*, 15 id. 184; 6 Cow. 449; *Bourland* v. *Sickles et al.*, 26 Ill. 497, 499.

3. Generally no contract can be rescinded by one of the parties, unless both can be restored to the condition in which they were before the contract was made. *Hunt* v. *Silk*, 5 East, 449; 2 Pars. on Con. 191, 192, note o.

4. And the fact that the plaintiff did or did not tender his deed at an earlier day to Emory, and demand a performance of the contract by Emory, is to be considered an election by plaintiff to rescind the contract, is not a proper subject of inquiry in a court of law. *Duncan* v. *Charles*, 4 Scam. 568.

5. In this case Sanford had title to said lot November 18, 1856. Emory occupied said lot under the contract until the deed was tendered him by Sanford; and when tendered, he did not attempt to repudiate the contract, but said he would come up in a few days and settle up. The only reasonable construcion which can be put upon this declaration, is that he would pay the one-fourth of the purchase-money and give his notes for the balance, and mortgage to secure the payment of the same, as he was bound by the contract. He did not then offer to surrender the possession of said lot to the plaintiff, but retained his rights acquired under said contract. Can it then be said that the plaintiff cannot recover in this action?

Messrs. TELLER & WOODRUFF, for the defendant in error.

The counsel for the plaintiff in error contends that " no valid contract can be rescinded by operation of law, but the party who wishes to rescind a contract must do some act to produce that effect." Yet it will not be questioned that parties may rescind by agreement, and that a continued neglect and default of one party to do and perform acts imposed upon him by contract, will entitle the other party, he not being in default, to treat the contract as rescinded; and the more so when the acts

of the delinquent are conditions precedent to any action or duty on the part of the other. 2 Pars. on Con. 191; *Rummington* v. *Kelly*, 7 Ohio, 97; Chitty on Con. 640–1; 1 Cush. 279; *Dwinel* v. *Howard*, 30 Me. 258; *Dodge* v. *Greely*, 31 id. 343; 1 Pick. 57; 4 id. 116.

2. We desire to submit another view of this case, as seen from the well settled rule in equity, that, "when damages are to be recovered at law for the breach of covenant, equity will compel a special execution of such act for the not doing of which the law gives damages." By this rule it is seen that if plaintiff in error can recover damages in this action, he could at the time of commencement of this action have brought and sustained an action for specific performance and compelled the execution of said contract. A reference to but a few leading principles, supported as they are by a host of cases, will be sufficient to show that no action for specific performance could have been successfully carried on by the plaintiff in error, at the time of the commencement of this suit.

In brief, we contend that in a case otherwise proper for specific performance, damages neither at law nor in equity, can be recovered for a breach of contract, when at the time of the breach complained of, a court of equity would not decree a specific performance of such contract on the prayer of him who claims damages.

If this be true, it disposes of this case, for, first, "a court of equity will not decree specific performance unless the party calling for it has shown himself *ready, desirous, prompt and eager to perform on his part.*"

*Seton* v. *Slade, White* v. *Tudor*, Lead. Ca. in Eq. 13, 27, and cases cited; 4 Vesey, 690; 5 id. 818.

Nor will equity decree specific performance when the purchaser has laid by and refused to complete it, even if he has paid a part of the purchase-money, and, *a fortiori*, it will not in behalf of a vendor who presents no such equity as part payment; 5 Vesey, 818.

In this case the vendor lays by from November 18, 1856, a few months after the contract was made, until January, 1859.

This delay is inexcusable and unexplained, and would effectually defeat an action for specific performance.

2.  This is one of that class of cases mentioned in *Biggs* v. *Steele*, 22 Ill. 655, when time is considered of the essence of the contract.  The rule is, "that when the thing sold be of a greater or less value, according to the effluxion of time, it is evident that time is of the essence of the contract;" 2 Story's Eq. Juris. 776; *White* v. *Tudor*, Lead. Cas. 20.

"Whether time is of the essence of a contract depends upon whether the right of the parties are affected by time;" 26 Wen. 252.

In this case they are affected to an extent of one-half the value of the subject matter of the contract.

Again, "performance will not be decreed when the party seeking it has been *inexcusably negligent in performing his part of the contract*, or if in the intermediate time there has been a material change of circumstances affecting the rights and interests of the parties.  *Seton* v. *Slade*, *White* v. *Tudor*, Lead. Cas. 27, 32–3, and cases there cited.

Again, "when either party to contract of sale fails or refuses to claim or act under the contract for such a length of time, as to give the impression that he has waived or abandoned the sale, and more especially when the circumstances justify the belief that his intention was to perform the contract only in case it suited his interest, he will necessarily forfeit all claim to the assistance of equity.  And in this point of view, an increase or depreciation of the value of the property, will have great weight in determining whether the delay of the complainant has been in good faith."  "When the delay and consequent change of value has arisen from the default of the party who seeks to enforce the contract, equity will *not* decree specific performance."  *Seton* v. *Slade*, *White* v. *Tudor*, Lead. Cas. 30, 31; cases cited.  *Schmidt* v. *Livingston*, 3 Edw. 213; *Williams* v. *Starke*, 2 B. Mon. 106; 2 Wheaton, 528; 16 Me. 92; 2 McLean, 495; 8 Watts, 374; 12 Me. 447; 11 Leigh, 69; *Jackson* v. *Ligen*, 3 id. 161; 1 Robinson, 12; 1 Peters, 376; 3 Randolph, 238; *Pratt* v. *Carroll*, 8 Cranch, 471.

In *Lloyd* v. *Collet*, 4 Bro. 469, Lord LOUGHBOROUGH says: "It may, then, be laid down as an acknowledged rule in courts of equity, that when the party who applies for a specific performance, has omitted to execute his part of the contract by the time appointed for that purpose, without being able to assign any sufficient justification or excuse for his delay; and when there is nothing in the conduct of the other party that amounts to an acquiescence in that delay, the court will not decree specific performance."

Our position is, in short, this: If a court of law would award damages for the breach of this contract, a court of equity would compel a specific performance of it. But as we have seen, a court of equity could not, without overriding well settled rules, decree a specific performance of it. A court of law cannot award damages upon it, and the judgment should be affirmed.

Mr. JUSTICE BREESE delivered the opinion of the court:

Defendants' intestate agreed, on the 14th day of February, 1856, with the plaintiff in error as follows:

Article of agreement made this 14th day of February, 1856, between C. D. Sanford as agent for the sale of town lots, in the town of Round Grove, Whiteside county, and State of Illinois, of the first part, and Samuel Emory, of the county and state above written, of the second part, witnesseth: That the party of the first part does hereby agree to sell unto the second party the following town lot, in said town of Round Grove, known and numbered as follows: Lot two (2) in block fourteen. (14) The condition for the purchase of which is the sum of two hundred (200) dollars, to be paid in the following manner: One fourth of the above amount to be paid when the proper papers are made by deed; a bond and mortgage to be given in return, by the second party to secure the unpaid balance; is to be divided into three equal payments, and payable in six (6), twelve (12), eighteen months; ten per cent interest from date until paid, said conditions to be complied with as soon as said C. D. Sanford, as agent, can safely make

title of said property, being now in part connected with the unsettled estate of John A. Holland of Rockford, deceased; which said estate is now being settled with reference to perfecting title, so that said C. D. Sanford may safely deed the same.                              C. D. SANFORD.   [SEAL.]

S. J. EMORY.      [SEAL.]

Emory, soon after, went into possession of the lot, built a corn crib on it, and occupied it for a year or more. The lot was not inclosed and was near the railroad depot.

Emory having died, the plaintiff filed this agreement in the County Court as a claim against his estate, which that court disallowed, and on appeal to the Circuit Court it was also disallowed.

It was in proof in the Circuit Court, that on the 6th of January, 1859, the plaintiff and wife executed a general warranty deed for the lot to Emory with the usual covenants, with the relinquishment of the dower of his wife, and duly acknowledged, which, on the 30th day of January, 1859, he tendered to Emory, when Emory said he did not want the deed—he would be up in a few days and settle.

It was also proved, that on that day the value of the lot was not more than one hundred dollars.

It was further proved that it was in plaintiff's power to have made a deed conveying the title at any time after the 18th of November, 1856.

The question is, was Emory bound to accept the deed when tendered?

The answer to this question involves the consideration of another, and it is this: Could Emory compel a specific performance of this contract if he had tendered the purchase-money on the 30th of January, 1859? By the terms of the agreement, the whole amount was due about the 18th of August, 1857. Sanford had it in his power to make the deed and demand the price on any day after the 18th of November, 1856, and had contracted to make it so soon as he was able. At law (and this was a proceeding at law), time is material. It was the clear duty of Sanford, in a reasonable time after that day, to

tender the deed; for before the deed was delivered Emory could not well execute the mortgage. Nor was he required to give his notes until the deed was made. To put Emory in default, then, the deed should have been tendered. This would have enabled Sanford to compel a specific performance.

To enable Emory to compel a specific performance, he should have, in a reasonable time after the 18th of November, notified Sanford that he was ready to comply with the contract on the execution of a deed. Neither party then has been in a position to compel a specific performance. Neither had shown himself ready, desirous, prompt and eager to perform.

But does it follow from this, that the contract is rescinded. Can one party without notice to the other, or by some affirmative act, rescind a contract? The rule is, where one party fails in performing the contract at the proper time, the other, if he means to rescind it, should give a clear notice of his intention. 1 Sug. on Ven. 279; *Reynolds* v. *Nelson*, 6 Wend. 20.

Emory had taken possession of this lot, and erected a building on it, and before the deed was tendered, on the 30th January, 1859, he had not surrendered the possession. For aught that appears, his heirs are still in possession of the premises. When this tender was made, he did not notify Sanford that he had rescinded the contract, but said he did not want the deed, but would come up in a few days and settle, nor did he offer to surrender the possession of the lot. On the authority of the case of *Gehr* v. *Hagerman*, 26 Ill. 438, we are inclined to think that before Emory could rescind, he was bound to restore the property to Sanford, or offer to restore it. The contract was in existence, and if the premises appreciated in value, Emory might at some future day claim its performance. He has no right to claim all the benefits of the contract and at the same time insist it is rescinded. The rescission should be mutual, so as to discharge the vendor as well as the vendee. *Teter* v. *Hinders*, 19 Ind. 93; *Johnson* v. *Houghton*, id, 259; *Bank of Columbia* v. *Hager*, 1 Peters, 455.

The judgment must be reversed and the cause remanded.

*Judgment reversed.*