480     SNYDER *et al. v.* SPAULDING.     [Sept. T.,

Syllabus.

## CHESTER K. SNYDER *et al.*

*v.*

## PHILIP SPAULDING.

1. LIEN—*upon real estate of sureties of school officers—at what time it attaches.* Under the school law, the lien upon the real estate of a surety upon the official bond of the treasurer of a board of school trustees, in case of the default of such officer, will attach, if judgment shall thereafter be rendered, from the date of the issuing of process in a suit upon the bond, without reference to the time of service.

2. SPECIFIC PERFORMANCE *in favor of the purchaser—delay in payment.* A court of equity will enforce the specific performance of a contract for the sale of land, in favor of the purchaser, where time is not of its essence, although the money was not paid within the time fixed by the agreement of the parties, if any reasonable excuse for such delay be shown.

3. RESCISSION *of contract by vendor—for default in payment.* In a suit instituted by a purchaser of land, to enforce a specific performance, it appeared that in May, 1864, the complainant proposed to purchase the premises at a stated price, a portion to be paid down and the balance in one and two years. On the 12th of that month his offer was accepted and the contract closed,—the cash payment made, and the purchaser took possession. On the 16th or 17th of June following the vendor proposed to accept, in satisfaction of the contract, a less sum than the amount of the deferred payments if paid within thirty days, to which the purchaser assented. On the 17th of June a suit was instituted in the county in which the land was situated, against the vendor as surety on the official bond of the treasurer of the trustees of schools in a certain township therein. Within the thirty days the purchaser tendered the amount to be paid within that time, and demanded a deed, but demanded that the vendor should first remove the lien he was advised was created by the suit on the treasurer's bond. This the vendor declined to do. In August following the vendor tendered a deed and demanded the balance of the purchase money, but the purchaser refused to pay the money until the supposed lien was removed. . Soon after, the vendor attempted to rescind the contract by a sale to other parties: *Held,* the vendor did not, under the circumstances, have a right to rescind the contract on account of delay in payment. The purchaser was not bound to determine whether the issuing of the summons in the suit on the treasurer's bond, operated to create a lien to his injury. It was sufficient in such case to justify the delay in payment, that the facts cast a cloud upon the title and rendered it suspicious in the minds of reasonable men, and to some considerable extent affected its value.

4. SAME—*placing purchaser in statu quo.* Under the circumstances mentioned the vendor would have no right to rescind the contract, even though the purchaser did not make payment within the time agreed upon, without first returning to him the money he had paid, or offering to do so. The vendor was in fault in not removing the cloud upon the title.

5. If there be mutual fault, the party who seeks to avail of the right to rescind must place the other party *in statu quo.* Or, if there be fault on the part of one party and the other party refuses to perform the contract for that reason, the former, before he can rescind the contract for non-performance, must restore whatever consideration he has received.

APPEAL from the Circuit Court of Grundy county ; the Hon. JOSIAH McROBERTS, Judge, presiding.

Messrs. DENT & BLACK and Messrs. OLIN & ARMSTRONG, for the appellants.

Mr. B. C. COOK, for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

This was a bill filed by the appellee, the complainant below, against George Willis and the appellants, praying for the specific performance of an alleged contract to sell forty-four acres of land, in the east half of the southwest quarter of section 4, township 31 north, range 8 east, in the county of Grundy. The bill was filed January 20, 1865, appellee then being in possession of the · land, which he described as being in the east half of the northwest quarter of said section. But during the progress of the cause, viz : April 18, 1868, appellee filed an amended bill, representing the land to be in the east half of the southwest quarter, instead of the northwest quarter, as first described. Also, on the first day of December, 1868, a cross bill was filed by appellants, Snyder and Clover, as grantees of George Willis, praying for possession and an account of rents and profits from Spaulding. On April 26, 1869, a decree was rendered for specific performance, and also at the same time the court dismissed the cross bill of

31—57TH ILL.

appellants, from which decisions they now prosecute this appeal.

Two questions are presented by this record for the consideration of the court:

*First.* Had Willis the right to rescind his contract with Spaulding, in August, 1864, or prior to that time, because Spaulding had not paid the balance of the purchase money? And this involves the question, whether there was an incumbrance on the land at that time, or an apparent incumbrance, that would afford Spaulding a reasonable ground for withholding the deferred payment for a reasonable time, to see if the same would be removed by Willis.

*Second.* Had Willis the right, under all the circumstances in this case, to rescind the contract between himself and Spaulding, in August, 1864, or prior to that time, without first tendering back the two hundred dollars, which Spaulding had already paid on the land?

The facts bearing on the solution of these questions may be briefly stated :

In May, 1864, Willis, who resided in the State of Ohio, was the owner of the land in controversy. Benson, who was his agent for the sale of the land, resided at Gardner, near the premises. Spaulding offered six hundred and fifty dollars for the land—two hundred dollars cash in hand, and the balance in two annual payments, with ten per cent interest. This offer Benson, the agent, communicated to Willis, who accepted it about the 12th day of May, 1864, by letter of that date, in which he says the title is good and the land free from incumbrance, except taxes, and authorized Benson to make the sale on the terms proposed, and promised to make the deed as soon as he conveniently could. On the receipt of this letter Benson closed the trade with Spaulding on the terms proposed, and received from him two hundred dollars on the contract ; and thereupon Spaulding entered into possession of the land, and commenced to and did make improvements, ranging from one hundred dollars to three hundred dollars in value.

About the 15th day of June of the same year, Willis came from Ohio to Grundy county, and then learned that the trade had been completed by his agent, Benson, and that Spaulding was then in possession of the land. On the 16th day of June, Willis went to Benson and received from him the two hundred dollars which Spaulding had paid on the contract, and at the same time executed a receipt, in which he stated that the money was received as a payment on the land, but erroneously described the land as being in the northwest instead of the southwest quarter. At this time, the 16th or 17th of June, Willis proposed if Spaulding would pay four hundred dollars within thirty days, in lieu of the four hundred and fifty dollars to be paid in two annual payments, he would deliver the deed. Spaulding assented to this proposal and promised compliance on his part. In pursuance of this agreement, Willis, being about to return, left a deed which had been executed by himself and wife before he left Ohio, with one William Hart, to be delivered on the payment of the money. This latter agreement between the parties rested entirely in parol, and simply left the original contract as it was, except as to the amount, and time of making the deferred payment. On the 17th day of June, 1864, a suit was brought in the Grundy circuit court against Willis, as security of the treasurer of the board of school trustees of the township, on his official bond, and a summons was issued and on that day placed in the hands of the sheriff.

Before the expiration of the thirty days, Spaulding tendered to Hart four hundred dollars and demanded a deed, and at the same time he demanded that Willis should first remove the lien that he was advised was created by the suit on the treasurer's bond. The fact of this tender and request was communicated by Hart to Willis, who declined to take any steps to remove the lien. In August following, Hart, as the agent, and at the request of Willis, tendered to Spaulding the deed and demanded the four hundred dollars, but Spaulding refused to accept the deed and pay the money unless Willis

would first remove the lien that he supposed was created by the suit on the treasurer's bond. Soon after this tender Willis sold and conveyed the land for four hundred dollars to the appellants, Snyder and Clover, they having at the time full knowledge of the equities of Spaulding in the premises.

Before this suit was instituted, January 20, 1865, Spaulding again tendered to Hart, as the agent of Willis, the sum of four hundred dollars, and the additional sum of fifty dollars, as the balance of the entire purchase money, and demanded a deed to the land free from all incumbrances, which was refused.

Willis having conveyed the premises, has now no interest in this proceeding, and this appeal is being prosecuted alone by the appellants, Snyder and Clover.

We do not understand that the subsequent arrangement, made between Willis and Spaulding, on the 16th or 17th day of June, was intended to or did abrogate entirely the original agreement between the parties. A valid agreement, with the terms well understood, then existed between them, by which both parties were bound. It might have been regarded as simply a proposition that if a less sum was paid, within a shorter period than was originally agreed upon, it would be accepted in full of the purchase money and the deed delivered, but if it was not so paid the original contract would stand as it was.

But if it was a new contract, and intended by the parties to take the place of the original one, still, time was not made of the essence of the contract, by any express agreement of the parties.

It will hardly be insisted that if time be not of the essence of the contract, in a case where the money is not paid within the time fixed by the agreement of the parties, if any reasonable excuse therefor is shown, equity will not, nevertheless, decree a specific performance. Equity does not propose to relieve against the express contract of parties, but it will recognize a reasonable cause for the non-performance, where time

is not made the essence of the contract by the express agreement of the parties. Chancery would be wanting in its boasted power to do justice under all circumstances, if it did not possess the power to afford relief in such cases. This principle was recognized in the case of *Brown* v. *Cannon,* 5 Gilm. 174.

It is insisted by the appellants, that the suit against Willis, on the bond of the treasurer, afforded Spaulding no reasonable ground for not proceeding with his contract, because the suing out of a summons was not a lien, except on the conditions, first, that it should be served, and, secondly, that the plaintiffs in the case should recover a judgment.

It is an admitted fact in the case, that the summons was never served on Willis, and that no judgment, in fact, was ever recovered against him. But it is true, however, that there was a considerable amount due on the bond on which he was sued, of which fact Spaulding was advised at the time.

We do not understand how Spaulding, by anything he could do, could advance the prosecution of the suit, or how he could be in any way held responsible if it was not prosecuted. It was certainly a proceeding over which he could have no control.

But when does a lien in such cases attach, from the issuing of the process, the date of service, or the date of the judgment, if one shall be rendered? It is purely a statutory lien, and the provisions of the statute must control. By the express terms of the statute, sec. 25 of the school law (Gross' Comp.), it is provided that the real estate of the securities of school officers, in case of default, shall be bound from the date of the issuing of the process, and that no alienation of the estate after process issued shall operate to defeat the lien created by this section. There is no provision that it shall require the service of the process or the rendition of a judgment to create the lien. The lien, therefore, attaches, if judgment shall thereafter be rendered, from the date of the issuing of the process, without reference to the time when it was served.

But it is still insisted, that if the lien could attach from the date of the issuing of the process, it did not attach to the estate in question, for the reason that the contract of sale was made before the date of the process, and that Spaulding was then in possession of the premises, and that Willis, at that date, had no such interest in the land to which the lien could attach.

It is uncertain, from this evidence, whether the parol contract which appellants now insist is the only contract between Willis and Spaulding, was made on the 16th or 17th day of June, or whether it was, in fact, made before the process was actually issued in the suit against Willis.

But if we concede that it was made on the 16th day of June, the day before the date of the process, it will hardly be necessary, for the purposes of this case, to inquire whether Willis, at that date, had such an interest in the real estate to which the lien could and did, in fact, attach. This would involve an inquiry into the questions, whether the term real estate, as used in the statute concerning school officers' bonds, should have as broad a signification as the same term when used in the statute concerning judgments and executions, and many other difficult questions.

If Spaulding, before he could hesitate to go forward in the execution of his contract, was bound to determine whether the process would certainly create a lien upon the premises, then he would be required to decide, with entire accuracy and at his peril, a question of law about which counsel learned in the law differ very widely in their views. This would be imposing too great a hardship on a man wholly unlearned in the law.

It is sufficient if the facts throw a cloud on the title and render it suspicious in the minds of reasonable men, and to any considerable extent affect its value. If Willis were here seeking to enforce a specific performance of this contract, a court of equity would not assist him with this suspicion resting on the title. To this effect is the case of *Brown* v.

*Cannon, ubi supra.* It would be most inequitable to do so, for if this lien did attach it might take with it the entire value of the property, and leave Spaulding to pursue his remedy on his covenants, in a distant State. Until Willis was in a position himself to enforce this contract, the law would allow Spaulding a reasonable time to wait for the removal of the cloud on the title. Equity would not require him to lose the benefit of an advantageous bargain, by compelling him to elect at once whether he would rescind the contract, or take the deed and rely on the covenants of a party living in a distant State, for the money advanced and the value of the improvements put upon the land.

But could Willis rescind this contract, under the facts in this case, if it be conceded that Spaulding did not pay the money within the time limited, without returning the money he had received and placing Spaulding in as good a condition as he was before the contract was made? If he could do so in this case, it would be to permit him to reap the reward of his own wrong. It is not denied, nor can it be, that if Willis had removed this lien, or apparent lien, the money would have been paid within the time limited by the contract. We apprehend that no case can be found where the contract has not been performed for the fault of the vendor, and where he has rescinded the contract for the non-performance on the part of the vendee for that reason alone, and yet the vendor permitted to retain the advanced payments. Such a doctrine is at variance with the plainest principles of common sense and justice.

All contracts with reference to lands must be performed or rescinded within a reasonable time. If there is mutual fault, the party who seeks to avail of the right to rescind must place the opposite party *in statu quo.* Or if there be fault on the part of one party and the other party refuses to perform the contract for that reason, such party, before he can rescind the contract for non-performance, must restore whatever consideration he has received; any other rule would manifestly be inequitable. It has been held by this court, that before a

party can rescind a contract, he must place the other party in *statu quo,* by offering to return whatever he has received under it. *Smith* v. *Doty,* 24 Ill. 165; *Buchenau* v. *Horney,* 12 Ill. 336.

The case of *Gehr* v. *Hagerman,* 26 Ill. 438, was with reference to the sale of land, and is in point. The court say, that usually before a party can rescind a contract, he must restore or offer to restore what he has received on the contract, and place the opposite party in the same situation as he was at the time the agreement was entered into by the parties. A party has no right to claim all the benefit of a contract, and at the same time insist that it is rescinded.

The same rule was recognized in the case of *Sanford* v. *Emory,* 34 Ill. 468.

The case of *Staley* v. *Murphy,* 47 Ill. 241, was concerning a land contract, and by the terms of the contract a forfeiture was reserved if payment was delayed beyond thirty days after the maturity of the notes, and the court held, on the authority of *Murphy* v. *Lockwood,* 21 Ill. 615, that the vendor could not rescind the contract for non-payment, without first tendering back to the vendee, or cancelling the same, the unpaid notes which he held for the purchase money.

It is insisted, however, by the appellants, that Willis, before rescinding the contract, was not bound to pay or tender back the money received, for the reason that the rents and profits enjoyed by Spaulding were an equivalent for the money received. A sufficient answer is, that at the time Willis attempted to rescind the contract no rents had then accrued. The contract was made in May or June, and in August following Willis attempted to rescind the contract.

We must, therefore, hold that Willis was not in a position to rescind, and could not rescind the contract at the time he attempted to do so, for the reason that he had not then paid back or offered to pay back the money received under it.

We find that Spaulding has always been ready to perform his contract and pay the money, if he could get a clear title.

He could not have anticipated that the amount due on the treasurer's bond, for which Willis was liable, would have been discharged in the manner it was. It was not indispensable that the appellee should have tendered the balance of the purchase money before he instituted his suit. It is time enough for a party to bring the money into court when called upon to do so. *Webster* v. *French,* 11 Ill. 254.

As soon as the decree was pronounced in his favor he paid the money into court for the use of appellants, and if they did not receive it it is their own fault.

The appellants purchased the property for two-thirds of its value, with the full knowledge of the equities of the appellee, and, therefore, have no better standing in court than Willis would have.

Perceiving no error in the record, the decree is affirmed.

*Decree affirmed.*