RHODE A. LANCASTER *et al.*

*v.*

GEORGE W. ROBERTS *et al.*

*Filed at Ottawa, January* 19, 1893.

1. CONTRACT OF SALE — *failure of vendor to comply — option of vendee.* A contract for the sale of land provided that the purchaser should be furnished with a complete abstract of the title, and that in case the title should be found to be materially defective within ten days thereafter, then unless such defects should be cured within sixty days after written notice thereof, the earnest money should be refunded, and the contract become void. *Held,* that on the failure of the vendor to obviate the defects in the title within sixty days after notice, the purchaser had the right to treat the contract as inoperative and demand the return of the cash payment, or to tender the balance of the purchase money and demand a deed of the premises, in the exercise of his legal option to take the defective title.

2. SAME — *promises by vendor to cure defective title — waiver as to time.* — If the vendor, from time to time, after the lapse of the sixty days, promises to cure the defects in the title, which promises are accepted, this will amount to an arrangement between the parties for an extension of the time fixed by the contract for the curing of the defective title, and such arrangement will involve a waiver on the part of the vendor of the requirement that the purchaser should either take back the earnest money or pay the balance of the purchase money at the expiration of the sixty days. Time, though the essence of a contract, may be waived.

3. SAME — *signing by a third person not named therein.* Where a third person merely annexes his name to a contract, which in the body of it does not mention him, and which is in itself a complete contract between other parties who sign it and are mentioned in it, such third person does not thereby become a party to the efficient and operative parts of the contract. His signature can only be regarded as an expression of his assent to the act of the parties making the contract, and may perhaps operate as an estoppel against his assertion of title.

4. So, when a written contract recited that A agreed to sell, and B agreed to purchase, a lot at a price named, and contained a covenant to convey by a good and sufficient warranty deed on payment, and the contract was signed by A, C and D as well as by B, it was held that C and D could not be held bound by the covenant or be treated as signing as joint vendors of A any more than that they signed as joint purchasers.

5. SAME — *mutuality of contract.* In such a case there is a want of mutuality in the contract as between B, the purchaser on the one side, and C and D on the other, as the latter could not enforce the contract as to B.

6. Where a contract is incapable of being enforced against one party, that party is equally incapable of enforcing it against the other.

7. SAME — *failure of vendor's title — his power to rescind.* Where the vendor of land is in no position to compel a specific performance of the contract by the vendee by reason of the failure of the vendor to remove incumbrances from the title, and his inability to make a good title, he can not rescind the contract.

8. SAME — *laches of purchaser — caused by acts of vendor.* The vendor of land can not take advantage of the purchaser's neglect to promptly rescind the contract, or take steps to enforce specific performance, when such delay is caused by the vendor's repeated promises to cure the defects in the title to the property, and thereby retain the earnest money.

9. Where the purchaser of land is induced to delay filing his bill for specific performance, by the promises of the vendor to cure the defects in the title, such promises will excuse a delay of about two years in filing the bill.

10. SAME — *conditions as to title — construed most strongly against vendor — option of purchaser.* A condition in a contract for the sale of land, by which the sale is to become void in case the vendor can not deduce a good title, is to be taken most strongly against him, because he alone is able to judge of the necessity of making the condition before he offers the property for sale. Such a condition gives an option, not to the vendor, but to the purchaser, to avoid the contract for failure to deduce a good title.

11. It is a familiar rule that the vendor of land can not force the purchaser to pay his money and receive a defective title, but the purchaser may elect to take a title which is defective.

12. SPECIFIC PERFORMANCE — *right of purchaser to waive failure of vendor—and to abatement out of purchase money.* In suits by the purchaser for a specific performance where the vendor is unable to make a complete title, it is a general rule that the purchaser, if he chooses, is entitled to have the contract specifically performed as far as the vendor can perform it, and to have an abatement out of the purchase money, or compensation for any deficiency in the title, quantity, quality, description or other matter touching the estate.

13. DOWER — *deed sufficient to release.* Where a deed of a husband is signed and acknowledged by his wife without mention of her name in the same, her signature will operate as a relinquishment of her dower, although the deed does not mention her as a grantor, or her dower in any way whatever. This depends upon the provisions of our statutes

which are construed as giving to the signature or acknowledgment of the wife or husband such effect.

14. PRACTICE — *demurrer by several defendants to a bill — good as to some and bad as to others.* Where there are several defendants, if they all join in one demurrer to a bill, the demurrer may be good and be allowed as to one of the defendants, and be bad and disallowed as to the other defendants, as the defense may be good as to one person and be wholly inapplicable to another.

APPEAL from the Superior Court of Cook county; the Hon. H. M. SHEPARD, Judge, presiding.

The original bill in this case was filed in the Superior Court of Cook County on November 21, 1889, by Resin Lancaster against the appellees for the specific performance of the following contract: " This memorandum witnesseth, that George W. Roberts * * * hereby agrees to sell, and Resin Lancaster * * * hereby agrees to purchase at the price of $15,500.00 * * * Lot * * 2, etc * * .* known as No. 1230 Wabash Avenue, Chicago, etc. * * * subject to (1) existing leases expiring, the purchaser to be entitled to the rents, if any, from the time of delivery of deed. (2) All taxes and assessments levied after the year 1886. (3) Any unpaid special taxes or assessments levied for improvements not yet made, subject to present lease.

Said purchaser has paid $500.00 as earnest money to be applied on said purchase when consummated, and agrees to pay within five days after the title has been examined and found good, the further sum of $15,000.00, * * * provided a good and sufficient Warranty Deed conveying to said purchaser a good title to said premises (subject as aforesaid), shall then be ready for delivery.

A complete abstract of title, or merchantable copy * * * to be furnished within a reasonable time, with a continuation thereof brought down to this date. In case the title upon examination is found materially defective within ten days after said abstract is furnished, then, unless the material defects be

cured within sixty days after written notice thereof, the said earnest money shall be refunded and this contract is to become inoperative.

Should said purchaser fail to perform this contract promptly on his part at the time and in the manner herein specified, the earnest money paid as above, shall at the option of the vendor, be forfeited as liquidated damages, including commissions payable by vendor, and this contract shall become null and void. Time is of the essence of this contract, and of all the conditions thereof.

*In Testimony whereof,* said parties hereto set their hands, this Twentieth day of July, A. D. 1887.

Interlined before signing.

GEORGE W. ROBERTS, [SEAL.]
NELLIE F. P. JONES, [SEAL.]
ANN AUGUSTE ROBERTS, [SEAL.]
RESIN LANCASTER, [SEAL.]"

On December 20, 1889, the defendants filed a demurrer to the bill, which was argued and sustained on August 6, 1890, and leave was then given the complainant to amend his bill. The case stood thus until November 9, 1891, when the complainant filed an amended bill, several solicitors in the meantime appearing for the defendants, and again withdrawing their appearance. The amended bill was demurred to by the three defendants, George W. Roberts, Nellie F. P. Jones, and Ann Auguste Roberts, and, the demurrer having been sustained, the complainant elected to stand by his bill, which was dismissed at his costs for want of equity. Subsequently his death was suggested, and his executors, the present appellants, were substituted as complainants.

The amended bill alleges, that on said July 20, 1887, said three defendants "being or pretending to be seized and possessed in fee simple" of said premises entered into said written agreement with the complainant for the sale of the

same; that said agreement was signed by each and all of said defendants and by complainant, and recorded on August 2, 1887, in the recorder's office of Cook County; that said defendants therein and thereby "jointly and severally covenanted and agreed for themselves, their heirs, executors and administrators, for and in consideration of the sum of $15,500, to be paid as hereinafter mentioned, well and truly to convey by a good and sufficient warranty deed in fee simple to your orator, his heirs or assigns, the tract or parcel of land above described; and in consideration whereof your orator covenanted and agreed to pay to said defendants, their heirs, executors or administrators the said sum of $15,500," in the manner stated in said agreement, which is attached as an exhibit to the bill and made a part thereof; that on or about August 2, 1887, said defendants submitted to the complainant an abstract of title to said premises, which, upon examination, was found to be materially defective: there being still outstanding and unreleased, three incumbrances executed by said George W. Roberts, one upon said premises for $1900, dated April 19, 1883, payable in three years; one upon said premises and other property for $23,000, dated May 26, 1886, payable in five years; one upon the undivided one-half of said premises and other property for $10,000, payable on demand; and there also being a judgment for $11,163, rendered May 27, 1887, against said George W. Roberts; that complainant was ignorant of said liens when the agreement was made; that knowledge of said defects was given by complainant to said defendants in writing within ten days after said abstract was delivered to complainant, and they were requested to cure the same, but said defendants and each of them wholly neglected to cure the same or any of them, although the defendant George W. Roberts from time to time from said last mentioned date until the date of the filing of the bill herein promised to cure such defects, and solely by reason of said promises and with the hope from day to day that the same would be cured, the

complainant delayed the filing of the bill in this cause until the 21st day of November, 1889 ; that orator has always been willing, able and ready to comply with the terms of said agreement on his part; that on the 2d day of August, 1887, and at divers times thereafter, he applied to said defendants and offered to pay them $15,000, on their delivering to your orator a sufficient warranty deed for the said premises according to said agreement; yet the said defendants refused and ever since have and still refuse to comply with said agreement on their part, and to convey said premises to complainant by a good and sufficient warranty deed conveying a good title subject as above set forth, although your orator is and always has been ready, willing and able to pay the said sum of $15,000, and fully perform his part of said agreement whenever they, the said defendants, will make and deliver to him a good and sufficient deed, subject as aforesaid, for the premises aforesaid, and to take such title as the defendants actually had, upon compensation being allowed to him for the difference in value of the title thus actually conveyed, and of the title agreed to be conveyed.

The prayer of the bill, after waiving the answer under oath, is that the said defendants may be decreed specifically to perform the said agreement, and to make a good and sufficient deed of conveyance to orator, he being ready, able and willing, and offering specifically to perform the agreement on his part, and upon the defendants making out a good and sufficient title to the said premises and executing a proper conveyance thereof to orator pursuant to the terms of said agreement, to pay to the defendants the residue of the said purchase money ; and that in case it shall appear that the title of said George W. Roberts in and to said premises is impaired in value by reason of the existence of and lien of said incumbrances and judgment, or any or either of them, said defendants be ordered and decreed to convey to the complainant such estate and title in and to said premises as they are by this court found to have

therein, and that the complainant be decreed to have compensation for the difference in value of the title thus actually conveyed, and of the title agreed to be conveyed; and that orator may have such other and further relief as equity may require.

Messrs. BALL, WOOD & OAKLEY, for the appellants:

Courts of equity have long since overruled the doctrine that a bond for the payment of money conditioned to be void on the conveyance of land, is to be considered a mere agreement to pay money. When the penalty appears to be intended merely as a security for the performance of the agreement, the principal object of the parties will be carried out. The agreement between the parties in this case is clearly no alternative agreement. *Dooley* v. *Watson*, 1 Gray, 414.

A bond with a penalty to convey land will be specifically enforced against the obligor. He can not elect to pay the penalty, and it is immaterial that the purchaser is not formally bound, or has not performed, if he has offered to perform. *Gillis* v. *Hall*, 7 Phila. 422; *Fisher* v. *Shaw*, 42 Mo. 32; *Daily* v. *Litchfield*, 10 Mich. 29; *Horken* v. *Pynchon*, 8 Gray, 550.

It is the law that one who signs an instrument is presumed to know its contents, and this presumption is so strong as to be binding upon one who can not write. *Doran* v. *Mullen*, 78 Ill. 346.

Nor can one who has signed a deed or will, invalidate the same by his parol declarations. *Dickie* v. *Carter*, 42 Ill. 376, cited with approval, and followed in *Massie* v. *Huntington*, 118 Ill. 88.

Where the name of a party appears in the body of an instrument, but he did not sign the same, he is not bound. The signature to the contract is the essential thing. *Thomas* v. *Caldwell*, 50 Ill. 140; *Mears* v. *Morrison*, Breese, 223.

The name of the party to be bound may appear anywhere in the instrument. "When the name is signed at the end,

the intention is obvious and clear that the party did so as an assent to the contract." But if the signature be found in the instrument, it is still a question of intention to be determined by an inspection of the paper. Bingham on Sale of Real Property, 428.

Even the setting down of initials may be a sufficient signature. Sugd. Vend. 116.

Under the provisions of section 1 of the act of 1869, it is clear that a married woman by joining in a deed or other writing of or relating to the sale, etc., of any lands with her husband, is concluded, as to any interest she might have in the land conveyed, including that of dower, as if she were sole.

From that time her contract in writing made jointly with her husband, for the disposition of her lands, became binding upon her, and she may be compelled to specifically perform the same. *Hogan* v. *Hogan,* 89 Ill. 430; *Edwards* v. *Schoeneman,* 104 id. 278; *Bute* v. *Kneale,* 109 id. 652; *Bradshaw* v. *Atkins,* 110 id. 323.

A glance at the authorities in our State will show that we are not to be barred by any lapse of time under the circumstances of this case. See *Hamilton* v. *Lubukee,* 51 Ill. 415; *Jackson* v. *Spink,* 59 id. 404; *Munn* v. *Burges,* 70 id. 604; *Farrar* v. *Payne,* 73 id. 82; *Rush* v. *Sherman,* 80 id. 160; *Cushman* v. *Walrod,* 83 id. 171; *Gibbons* v. *Hoag,* 95 id. 45; *Beach* v. *Dyer,* 93 id. 295; Wood on Liens, 117; *Carter* v. *Tice,* 120 Ill. 287.

Messrs. Oliver & Showalter, for the appellees:

Engagements as to title are never implied as against the vendor of land. Every such guaranty must be expressly contracted for, otherwise the purchaser takes his chance as to defects in the title. *Botsford* v. *Wilson,* 75 Ill. 136.

The contract fixes the consequences to the parties of a failure or refusal by the vendor to cure a defect of title, namely, that

"the said earnest money shall be refunded and this contract is to become inoperative." This stipulation is for the benefit of the vendor.

The case of a person not a party to a contract subscribing his name to the same, is so far exceptional, that the only instances readily found in the books are those where married women have written their names to deeds or contracts made by their husbands. In Illinois effect is given by statute to the mere formality of subscribing and acknowledging by a wife, even in a case where the deed, on its face, would not show her to be a party to the contract. The question here is, what legal significance is imported by the fact that a person subscribes his name to a writing, when the contract expressed in said writing appears to be between other persons? That Mrs. Roberts or Mrs. Jones may or may not be married women is immaterial. They did not become parties to the contract by writing their names to the paper set forth in this amended bill, as is shown by the following citations : *Powell* v. *M. & B. M. Co.*, 3 Mason, 349; *Fowler* v. *Shearer*, 7 Mass. 14; *Lithgow* v. *Kavanagh*, 9 id. 161; *Catlin* v. *Ware*, id. 218; *Lufkin* v. *Curtis*, 13 id. 223; *Bruce* v. *Wood*, 1 Metc. 543; *Leavitt* v. *Lamphrey*, 13 Pick. 382; *Cox* v. *Wells*, 7 Blackf. 410; *Davis* v. *Bartholomew*, 3 Ind. 485; *McFarland* v. *Febiger*, 7 Ohio, 194; *Lothrop* v. *Foster*, 51 Me. 367; *Hatcher* v. *Andrews*, 5 Bush, 46–61; *Bank* v. *Rice et al.*, 4 How. 225.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court :

*First,* it is claimed on the part of the appellees, that the demurrer to the bill was properly sustained, upon the alleged ground, that the provisions of the contract described in it are not binding upon all the parties against whom it is sought to specifically enforce it. This contention is based upon the fact, that the contract does not mention or in any way refer to Nellie F. P. Jones and Ann Auguste Roberts, although it is

signed by them.  As they are not referred to in the body
of the agreement, it is said that their signatures thereto are
mere surplusage.

The courts have passed upon a number of cases, where the
deed or contract of a husband has been signed by his wife
without mention of her name in the instrument itself.  It has
been held in this State, that, where the wife of a grantor in a
deed signs the deed with him, her dower is thereby relinquished,
although the body of the deed does not describe her as a
grantor, or name her or her dower in any mode whatever.
(*Johnson* v. *Montgomery*, 51 Ill. 185; *Miller* v. *Shaw*, 103
Ill. 277; *Yocum* v. *Lovell*, 111 Ill. 212; *Schley* v. *Pullman
Palace Car Co.*, 25 Fed. Rep. 890; *Bute* v. *Kneale*, 109 Ill.
652).  The same is true of the estate of homestead as well as
of the estate of dower, and of deeds where the wife is grantor
and the husband signs with her without being named in the
deed.  (Idem.)  The Illinois cases, however, depend upon
particular statutory provisions, which are construed as giving
to the signature or acknowledgment of the wife or husband
the effect above stated.  In other States it has been held, that
a deed which is merely signed by a wife, but does not contain
apt words of grant on her part, does not pass her dower.
(*Bruce* v. *Wood*, 1 Met. 542; *Leavitt* v. *Lamprey*, 13 Pick.
382; *Lothrop* v. *Foster*, 51 Me. 367; *Cox* v. *Wells*, 7 Blackf.
410; *Davis* v. *Bartholomew*, 3 Ind. 485; *McFarland* v.
*Febiger*, 7 Ohio, 337).  These cases, decided in other States,
were shown in *Johnson* v. *Montgomery*, *supra*, to be inappli-
cable under the statutes of Illinois.

But we have been referred to no authority, which discusses
the effect of merely signing a deed or contract where the rela-
tion of husband and wife does not exist between the grantor or
party named in the instrument, and the party signing the same
but not named therein.  It would seem, however, upon reason
and principle, that, where a third person merely annexes his
name to a contract which in the body of it does not mention

him, and which is in itself a complete contract between other parties who sign it and are mentioned in it, such third person does not thereby become a party to the efficient and operative parts of the contract. His signature in such case can only be regarded as an expression of his assent to the act of the parties in making the contract, and may perhaps operate as an estoppel against his assertion in the future of an adverse interest in the subject-matter of the agreement. We, therefore, think that the bill misstates the effect of the signatures of Nellie F. P. Jones and Ann Auguste Roberts to the contract in alleging that they thereby agreed to sell the lot and covenanted to convey it by a good and sufficient warranty deed. The assumption, that they signed the contract as joint vendors with George W. Roberts, is no more justified by anything which appears upon the face of the instrument, than the assumption that they signed their names as joint purchasers with Lancaster.

There is a want of mutuality in the contract as between Lancaster on the one side and said Nellie and Ann on the other. The latter could not enforce the contract against the former. " Whenever    *    *    *    the contract is incapable of being enforced against one party, that party is equally incapable of enforcing it against the other, though its execution in the latter way might in itself be free from the difficulty attending its execution in the former." (Fry on Spec. Perf.—3 ed.—sec. 440)

But, while the demurrer was properly sustained as to said Nellie and Ann, it need not necessarily have been sustained as to George W. Roberts. " Where there are several defendants, if they all join in one demurrer to a bill, the demurrer may be good and be allowed as to one of the defendants, and be bad and disallowed as to the other defendants ; for the defence may be good as to one person, and be wholly inapplicable to another." (Story's Eq. Plead., sec. 445). If, therefore, the bill is such, that the complainant was entitled to have an answer to it from George W. Roberts, it was error to sustain the demurrer as to him.

*Second,* it is claimed on behalf of the appellees that the demurrer to the bill was properly sustained upon the alleged ground that the only remedy, which the purchaser named in the contract can resort to, is a suit at law for the amount of the cash deposit made at the time of the execution of the agreement. This contention is based upon that clause in the contract which provides, that "in case the title upon examination is found materially defective within ten days after said abstract is furnished, then unless the material defects be cured within sixty days after written notice thereof, the said earnest money shall be refunded and the contract is to become inoperative."

A condition in a contract of sale, by which the contract is to be void in case the vendor cannot deduce a good title, is to be taken most strongly against the vendor, because he alone is able to judge of the necessity or propriety of making the condition before he offers the property for sale. (*Greaves* v. *Wilson,* 25 Beav. 290; *Page* v. *Adams,* 4 Beav. 269). Such a condition gives an option, not to the vendor, but to the purchaser, to avoid the contract for failure to deduce a good title. (*Roberts* v. *Wyatt,* 2 Taunt. 268). In the recent case of *Hale* v. *Cravener,* 128 Ill. 408, the contract contained the following provision: "In case the abstract of title to be furnished as aforesaid does not show a good title, as herein stated, then the $500.00 this date paid thereon shall be returned to said first party, and this contract determined;" and we there held, that said provision was designed for the benefit of the purchaser and could not be taken advantage of by the vendor, because the latter was presumed to know the title, while the former did not know it. If it were otherwise, a vendor might purposely neglect to furnish a good title, and then rely upon his own default, in order to accomplish a rescission of the contract by merely returning the earnest money.

It is a familiar rule, that the vendor cannot force the purchaser to pay his money and receive a defective title. (*Wallace* v. *McLaughlin,* 57 Ill. 53; *King* v. *Knapp,* 59 N. Y.

462; *Hepburn* v. *Auld*, 5 Cranch, 262). But the purchaser may elect to take a title which is defective. (*Harding* v. *Parshall*, 56 Ill. 219; *Hoyt* v. *Tuxbury*, 70 Ill. 331; *Hale* v. *Cravener, supra;* 3 Pom. Eq. Jur., sec. 1405, and cases referred to in notes).

In the case at bar, the title was found to be defective within ten days after the abstract was furnished, and notice of such defects was given to the vendor, who was allowed by the contract sixty days after such notice for the purpose of curing the defects. At the end of the sixty days the vendor, Roberts, had not cleared the title by removing the incumbrances and cancelling the judgment. Therefore, the purchaser, Lancaster, had the right at that time either to treat the contract as inoperative and demand the return of his cash payment, or to tender the balance of the purchase money and demand a deed of the premises in the exercise of his legal option to take the defective title disclosed by the abstract. There are no allegations in the bill, that he did either, but the bill alleges that Roberts promised from time to time after the lapse of the sixty days to cure the defects in the title, and that Lancaster was always ready and willing to perform his part of the contract. The bill being demurred to, these allegations must be assumed to be true. If Roberts thus promised to cure the defects and Lancaster accepted his promise to do so, there was substantially an arrangement between the parties for an extension of the time fixed by the contract for the curing of the defective title. This arrangement involved a waiver on the part of Roberts of the requirement that Lancaster should either take back the earnest money, or receive the defective title, at the expiration of the sixty days. Although time be made of the essence of the contract, yet the condition may be waived. (1 Sugden on Vendors—Perkins' 8th Am. ed.—page 417; *Dennis* v. *McCagg*, 32 Ill. 429).

The vendor here has not been in a position to compel a specific performance by the vendee. The latter could not be compelled to pay for a title clouded by encumbrances. Unless the

15—144 ILL.

vendor can sustain a bill for specific performance, he cannot rescind the contract. (*Wallace* v. *McLaughlin, supra*). Even if Roberts had the right to tender a deed and offer to return the earnest money, he did not do so. His failure to make such tender and offer is implied from the continued promises to cure the defects in the title, as such promises are alleged in the bill. It would be inequitable to allow the vendor to retain the earnest money, if the purchaser was ready and willing to perform and was prevented from taking steps to enforce performance against the vendor by the latter's promises to cure the defects in the title. (*Snyder* v. *Spaulding*, 57 Ill. 480).

We do not think, that the bill is demurrable because it asks for compensation or for an abatement of the amount of the encumbrances out of the purchase-money. When the answer and the testimony are before the court, it may not be possible or advisable to grant such compensation, but equity has the power to allow it. In suits by the purchaser for a specific performance where the vendor is unable to make complete title, "the general rule (for it is not universal), in all such cases is, that the purchaser, if he chooses, is entitled to have the contract specifically performed as far as the vendor can perform it, and to have an abatement out of the purchase money or compensation for any deficiency in the title, quantity, quality, description or other matters touching the estate." (2 Story's Eq.. Jur.—13th ed.—sec. 779 ; *Woodbury* v. *Luddy*, 14 Allen, 1 ; *Gerome* v. *Scudder*, 2 Rob. (N. Y.) 169 ; *Wallace* v. *McLaughlin, supra ; Snyder* v. *Spaulding, supra ; Lombard* v. *Chicago Sinai Congregation*, 64 Ill. 485). We are of the opinion that Lancaster was entitled to file the bill, and cannot be limited to an action at law for the earnest money.

*Third*, it is said that the demurrer to the bill was properly sustained upon the alleged ground that it shows *laches* upon the part of the purchaser. If it should turn out to be true when the facts are developed, that the purchaser was induced to postpone action under the contract by promises to cure the

title made by the vendor from time to time during the period between notice of the defects and the filing of the original bill, then the purchaser was excusable for not sooner filing his bill for specific performance. While the allegations are not as full and definite as they should have been both in regard to the causes of the delay in beginning the suit and in regard to the other matters herein considered, yet we think that the bill shows sufficient ground for relief to have justified the court in overruling the demurrer as to George W. Roberts and requiring him to answer.

We cannot see that the delay in the progress of the suit after the demurrer to the original bill was overruled and leave was given to amend it, was due any more to the fault of the complainant than to the fault of the defendants. There is no specific relief asked for in the amended bill, which could not have been granted under the general prayer for relief in the original bill. The original bill, as well as the amended bill, was for the specific performance of the contract. The amended bill was in no sense a new suit, and the delay in filing it cannot be charged as *laches* under the circumstances of this case.

The decree of the Superior Court in sustaining the demurrer and dismissing the bill is reversed, and the cause is remanded to that court for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*