### In re ESTATE of Gordon S. DICKERSON, Jr.

Supreme Court of Tennessee.

May 19, 1980.

L. Wearen Hughes, Nashville, for claimant.

Claude Callicott, James C. McBroom, Nashville, for estate.

## OPINION

BROCK, Chief Justice.

The claimant, Executive Plaza, is the lessor of premises used as a restaurant and has brought this action against the estate of Gordon S. Dickerson, Jr., to recover $1,943.57 alleged to be due under the terms of the lease. Gordon S. Dickerson, Jr., now deceased, although not named as a party in the lease, did sign his name at the end thereof and, therefore, the lessor has filed claim against the estate of Gordon Dickerson, Jr. The probate court held that Gordon Dickerson, Jr., was personally liable as a guarantor and rendered judgment accordingly. The Court of Appeals affirmed that judgment, concluding that Gordon Dickerson, Jr., became personally liable either as a principal party to the lease or as a guarantor of the corporate tenant's performance. We granted certiorari review to consider the issue of Gordon Dickerson, Jr.'s personal liability under the lease.

## I

The parties have presented a very meager record for review. It appears that Sea Fare Unlimited, Inc., was funded entirely from the resources of the decedent, Gordon Dickerson, Jr. The decedent's brother, Buford Dickerson, was named President of the corporation, Buford's wife, Donia, was named Vice-President, and the decedent, Gordon, was appointed Secretary-Treasurer of the corporation. Sea Fare was incorporated to operate a business known as the Delta Cajun Oyster Bar, a restaurant, which was located in the Executive Plaza Building. The restaurant premises were leased under a written lease then identified the parties thereto as follows:

## "LEASE AGREEMENT

"THIS LEASE made this *26th* day of *November*, 1975 between EXECUTIVE PLAZA, a limited partnership, hereinafter referred to as 'Landlord,' and *SEA FARE UNLIMITED, INC. D/B/A DELTA CAJUN OYSTER BAR, BUFORD DICKERSON, PRESIDENT*, hereinafter referred to as 'Tenant.'"

Then follows several pages of covenants, both by the landlord and tenant, throughout which the tenant is designated as Sea Fare Unlimited, Inc.; nowhere is Gordon Dickerson, Jr., mentioned in the lease as a tenant or other party to the lease. Neither does the lease contain any promise on the part of Gordon Dickerson, Jr., to guarantee any obligation of the corporate tenant, Sea Fare Unlimited, Inc.

The lease then concludes as follows:

"IN WITNESS WHEREOF, the respective parties hereto have executed this Lease or caused this Lease to be executed and sealed by their duly authorized representatives, the day, month and year first above written.

EXECUTIVE PLAZA, a limited partnership

Witness:
/s/ Norma J. Waly
(Norma J. Waly)

BY: /s/ Jack D. Brandon
General Partner LANDLORD
(Jack D. Brandon)

SEA FARE UNLIMITED, INC.
D/B/A DELTA CAJUN OYSTER BAR
TENANT

Witness:

BY: /s/ Buford Dickerson II
BUFORD DICKERSON
Title: PRESIDENT

Witness:

/s/ Betty Capps
 (Betty Capps)

/s/ Gordon Dickerson
GORDON DICKERSON"

---

It appears that Buford and Donia Dickerson actually operated the Delta Cajun Oyster Bar from its opening in December, 1975, until April 14, 1976, at which time they abandoned the restaurant.

In the meantime, on February 27, 1976, Gordon Dickerson died intestate in Atlanta, Georgia. His widow was appointed administrator and, later, attorney Daniel D. Finch was appointed co-administrator to assist in handling the estate. After Buford and Donia Dickerson abandoned the operation of the Delta Cajun Oyster Bar the administrators of the estate of Gordon Dickerson, Jr., assumed the operation of the restaurant in order to protect the interests of the estate.

The claim of the plaintiff-landlord in this litigation is for certain "completion charges" which is conceded were owing to the landlord for certain repairs to the leased premises.

It is not denied that Gordon Dickerson, Jr., actually signed the lease as above indicated, although the lease clearly discloses that he is not named as a party in the lease. It is also clear that Gordon Dickerson, Jr., did not in writing undertake to guarantee the performance of the duties of the corporate tenant under the terms of the lease.

## II

Gordon could have signed the lease in any one of three capacities, *viz.*, (1) as a principal party to the lease, (2) as a guarantor or (3) as an officer for the corporate tenant.

■ It is a general rule of interpretation of contracts that when the body of a contract purports to set out the names of the parties thereto and a person not named in the body of the contract signs the contract and nothing in the contract indicates that such person signed as a party, then such person is not bound as a party to the contract and is not liable thereunder. *Ferrell*

*v. Elrod*, 63 Tenn.App. 129, 469 S.W.2d 678, 682–83 (1971); *Brown v. O'Byrne*, 153 Ala. 621, 45 So. 129 (1907); *Lancaster v. Roberts*, 144 Ill. 213, 33 N.E. 27 (1893); *Nutrena Mills, Inc. v. Earle*, 14 Wis.2d 462, 111 N.W.2d 491, 94 A.L.R.2d 686 (1961); 17 Am.Jur.2d *Contracts* § 295 (1964); 49 Am. Jur.2d *Landlord and Tenant* § 64 (1970); Annot., 94 A.L.R.2d 691; 17 Am.Jur.2d *Contracts* § 70 (1964). Cf. *Brown v. Mays*, 34 Tenn.App. 632, 241 S.W.2d 871 (1949).

■ Application of the foregoing rule to the instant case results in our conclusion that Gordon Dickerson, Jr., did not incur liability as a principal party to the lease contract.

## III

We consider now the possibility that the signature of Gordon Dickerson, Jr., at the end of the lease contract created personal liability on his part as a guarantor. Immediately we are confronted with the assertion by the estate that such liability is prevented by the Statute of Frauds which, insofar as pertinent here, provides:

"No action shall be brought:

\* \* \* \* \* \*

"(2) whereby to charge the defendant upon any special promise to answer for the debt, default, or miscarriage of another person;

\* \* \* \* \* \*

"Unless the promise or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person by him thereunto lawfully authorized." T.C.A., § 23-201.

■ There can be no doubt that this provision of the statute applies to an alleged contract of guaranty.

"It may be asserted generally that an undertaking which renders the promisor a guarantor or surety upon a debt owing by a third person who is primarily liable is within the statute of frauds whether made before, after, or contemporaneously with the inception of the third person's liability, provided that the promisee knows or has reason to know of the guaranty or suretyship relation." 72 Am. Jur.2d *Statute of Frauds* § 180 (1974) at 711. Accord: *Brown v. O'Byrne, supra; Knight & Jillson Co. v. Castle*, 172 Ind. 97, 87 N.E. 976 (1909); *Good v. Martin*, 95 U.S. 90, 24 L.Ed. 341 (1877); *Gulf Liquid Fertilizer Co. v. Titus*, 163 Tex. 260, 354 S.W.2d 378 (1962).

■ The signature of Gordon Dickerson, Jr., at the end of the lease contract which does not contain any promise by him to answer for the debt, default or miscarriage of the tenant named therein, Sea Fare Unlimited, Inc., does not constitute a compliance with the Statute of Frauds.

"Where an agreement naming in the body of the instrument the parties bound thereby is signed by a third person not named therein, he cannot be regarded as one of the principal obligors, and the question has frequently arisen as to whether this constitutes a sufficient memorandum to bind him as a guarantor or surety for the parties named. In such a case, since oral evidence is necessary to show the undertaking of a person so signing, it is generally held that there is not a sufficient memorandum of an agreement to become surety or guarantor. Thus, where a person not named in a lease as a party thereto signs the lease, it is held that to allow his liability as a guarantor for the lessee to be established by oral evidence would be violative of the statute." 72 Am.Jur.2d *Statute of Frauds* § 316 (1974) at 836–37; *See also*: *Ferrell v. Elrod, supra*; 94 A.L.R.2d at 720 and cases therein cited.

Therefore, liability of Gordon Dickerson, Jr., as a guarantor is not established in this case.

## IV

■ The claimant contends, however, that the writing required by the Statute of Frauds was supplied by attorney Finch, one of the co-administrators of the estate of Gordon Dickerson, Jr., in the form of two documents filed by him in the probate court, one styled: "Petition for Instructions," and another styled: "Memorandum of Facts and Requests for Relief." Each of these documents contained statements by the administrator and attorney, Finch, that Gordon Dickerson, Jr., had signed the lease in question as guarantor of the tenant's obligations thereunder. We disagree with this contention. These statements were only legal conclusions, not statements of fact. They were not made by Gordon Dickerson, Jr., nor "by some other person by him thereunto lawfully authorized." Moreover, although no such insistence is made by the claimant, these statements by Mr. Finch do not establish either a waiver or an estoppel against the estate of Gordon Dickerson, Jr.

■ Finally, it should be obvious that the testimony of Buford Dickerson, admitted over the objection of the estate, to the effect that Gordon stated at some time after the lease was executed that he had signed it as a guarantor cannot, contrary to the Statute of Frauds, support a conclusion that Gordon Dickerson, Jr., was a guarantor of the tenant.

Our conclusion is that the trial court and the Court of Appeals erred in concluding that Gordon Dickerson Jr., incurred personal liability under the lease in question. Their judgments are, accordingly, reversed and the claim of Executive Plaza for completion charges against the estate is dismissed. Costs in all courts are taxed against Executive Plaza.

FONES, COOPER, HENRY and HARBISON, JJ., concur.