THE HENRY O. SHEPARD CO., RESPONDENT, *v.* FREE-
MAN, APPELLANT.

(No. 2,720.)

(Submitted November 27, 1909.  Decided December 8, 1909.)

[105 Pac. 484.]

*Contracts—Persons Bound—Construction—Parol Evidence—In-
admissibility.*

Contracts—Construction—Parties—Persons Bound.
1.  At the time the contract in question was executed plaintiff held,
and had a lien on, certain property of F., who was also indebted to
the corporations mentioned in the contract, and they had begun ac-
tions against F. with a view of satisfying any judgments obtained
out of the property in plaintiff's possession.  The contract recited
that it was made between such corporations and defendant, that such
corporations had commenced actions against F. for certain moneys,
etc., and that defendant had paid to such corporations and to plain-
tiff a certain sum, and gave his note for the remainder of the amount
due to them and plaintiff from F., and provided that such corpora-
tions thereby sold and assigned to defendant all of their claims, to-
gether with the contracts, drafts, etc., delivered to them by F. as
security for the indebtedness sued on, and agreed to prosecute such ac-
tions and all other actions necessary for defendant's protection the
same as if the assignments had not been made, and further agreed
to assign the judgments procured to defendant if the prosecutions
were successful, or purchase F.'s property then subjected to lien, if
sold, and turn it over to defendant.  The contract was signed by the
corporations and defendant, and under their signature was written,
"We hereby consent to the above contract," followed by plaintiff's
signature.  *Held,* that plaintiff's only obligation was not to obstruct
the parties bound thereby in carrying out the agreement, which was
to have defendant assume F.'s indebtedness to the corporations, and
transfer to him their rights in prosecuting the actions, so as to
realize out of the property on which plaintiff had a lien, sufficient
to satisfy the claims of the corporations and discharge the note given
plaintiff, and plaintiff was not bound to transfer to defendant its
claim against F. or prosecute it for defendant or surrender defend-
ant's note in case the actions against F. were not successfully pros-
ecuted by the corporations.

Same—Parties—Parol Evidence—Inadmissibility.
2.  Where there was nothing in a contract signed by a third party
which showed a consideration affecting him or inducing him to become
a party to it, or an intent on his part to be bound as surety for or
joint promisor with one of the parties efficiently bound, parol evi-
dence may not be resorted to for the purpose of furnishing the basis
of an inference that he was or was not bound.

*Appeal from District Court, Lewis and Clark County; Thos.
C. Bach, Judge.*

ACTION by the Henry O. Shepard Company against George O. Freeman. From a judgment for plaintiff upon a directed verdict, defendant appeals. Affirmed as modified.

*Mr. C. A. Spaulding* filed a brief in behalf of Appellant, and argued the cause orally.

By its indorsement of the agreement in the words "we hereby consent to the above contract," respondent ratified it, made itself a party thereto, and is bound by its terms. (*Laclede etc. Mfg. Co.* v. *Williams,* 14 Colo. 37, 23 Pac. 453; *Drakeley* v. *Gregg,* 8 Wall. 267, 19 L. Ed. 409.)

But without regard to such ratification, respondent is bound by the terms and conditions thereof by reason of having accepted the benefits flowing therefrom. (Revised Codes, sec. 4995.) That such acceptance of the benefits of the transaction sufficed to constitute it a party to the contract and bound by its terms, is not only declared by said statute, but is sustained by ample authority, even in jurisdictions where no such statute law exists. (*White* v. *Stevenson,* 144 Cal. 104, 77 Pac. 828; *Gallagher* v. *Equitable Gaslight Co.,* 141 Cal. 699, 75 Pac. 329; *Phillips* v. *Sanger Lumber Co.,* 130 Cal. 431, 62 Pac. 749; *Gribble* v. *Columbus Brwg. Co.,* 100 Cal. 67, 34 Pac. 527; *Pixley* v. *Western-Pac. R. R. Co.,* 33 Cal. 183, 91 Am. Dec. 623; *Blood* v. *La Serena L. & W. Co.,* 113 Cal. 221, 41 Pac. 1017, 45 Pac. 252; *Rogers* v. *New York etc. Land Co.,* 134 N. Y. 197, 32 N. E. 32; *Bennett* v. *Judson,* 21 N. Y. 238.)

The agreement being that of respondent, did a failure to perform its conditions constitute a defense to the note sued on? It is well settled that failure to perform an agreement executed contemporaneously with a negotiable instrument given as the consideration thereof constitutes, between the original parties, or those with notice, a valid defense to a suit on such negotiable instrument. (Joyce on Defenses to Commercial Paper. secs. 310-322; Eaton & Gilbert on Commercial Paper, 272; *Goodwin* v. *Nickerson,* 51 Cal. 166; *Braly* v. *Henry,* 71 Cal. 481, 60 Am. Rep. 543, 11 Pac. 385, 12 Pac. 623; *Brevoort* v. *Hughes,* 10 Colo.

App. 379, 50 Pac. 1050; *Huntington* v. *Lombard,* 22 Wash. 202. 60 Pac. 414; *Risley* v. *Gray,* 98 Cal. 40, 32 Pac. 884; *Brewer* v. *Harris,* 2 Smedes & M. 84, 41 Am. Dec. 587; *Reynolds* v. *Nevin,* 1 Ga. App. 269, 57 S. E. 918; *Talbot* v. *Heinze,* 25 Mont. 4, 63 Pac. 624.)    And the rule is the same in a suit upon a renewal note founded only upon the consideration of the original note. (8 Cyc. 36; *McCormick Harvesting Co.* v. *Watson,* 5 S. D. 9, 57 N. W. 945; *Wheelock* v. *Berkeley,* 138 Ill. 153, 27 N. E. 942; *Cochran* v. *Perkins,* 146 Ala. 689, 40 South. 351; *Turle* v. *Sargent,* 63 Minn. 211, 56 Am. St. Rep. 475, 65 N. W. 349; 1 Parsons on Bills and Notes, 176; Tiedeman on Commercial Paper, sec. 180.)

*Messrs. H. G. & S. H. McIntire,* and *Messrs. Purcell & Horsky,* submitted a brief in behalf of Respondent.   *Mr. H. G. McIntire* argued the cause orally.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This action was brought to recover a judgment for the principal sum of $1,385.35 upon a promissory note executed and delivered to plaintiff, an Illinois corporation, by defendant on August 13, 1901, due and payable sixty days thereafter, together with interest from the date of maturity.

The complaint is in the ordinary form.   The answer of defendant admits all the allegations contained in it.   By way of special defense, as showing a total failure of consideration for which the note was given, it then alleges as follows:

"(1) That on or about the thirty-first day of January, 1901, H. C. Freeman and George B. Dygert were indebted to the plaintiff, the Illinois Engraving Company, and the Dwight Paper Company, and that on or about said date the said parties made and entered into an agreement in writing with this defendant, by which said parties agreed that, in consideration of the payment to them of the sum of $1,000 by this defendant and the execution and delivery to them by this defendant of a

promissory note in the sum of $1,159.40, they, the said parties, would immediately thereafter institute actions in some court of competent jurisdiction in the city of Chicago upon their respective claims against the said H. C. Freeman and George B. Dygert, and prosecute such actions to judgment, and that, upon the recovery of judgments, they would cause executions to be issued thereon, and certain property of the said H. C. Freeman and George B. Dygert to be seized, levied upon, and sold by virtue of such executions, and at such sale or sales would bid for said property its value, and, if purchased by them, would transfer and deliver the same, and the whole thereof, to this defendant; that said parties also agreed that if, after the application of the proceeds derived from the sale of such property to the payment of said claims, any part thereof should remain unpaid, they would transfer and assign to this defendant such part of said claims as remained unpaid.

"(2) That this defendant, in compliance with such agreement, paid to the said parties the said sum of $1,000, and made, executed, and delivered his promissory note for the said sum of $1,159.40.

"(3) That the said plaintiff and said other parties failed and refused to keep and perform either of the terms or conditions of said agreement, by reason of which this defendant has never received any consideration whatever for said promissory note.

"(4) That the promissory note described in the complaint is a renewal of said promissory note for the sum of $1,159.40, and was executed and delivered for the same consideration as said original note, and no other consideration, which said consideration has wholly failed as aforesaid."

As a counterclaim it alleges the same facts as those set forth in the special defense, and concludes: "That the said plaintiff and said other parties failed and refused to keep and perform either of the terms or conditions of said agreement, to defendant's damage in the sum of $1,000."

In a second count recovery is sought by way of counterclaim for the same amount, as for money had and received by plain-

tiff for the use of defendant on January 1, 1901, which the plaintiff refused to pay upon request. Judgment is demanded for $1,000, with interest from January 1, 1901.

The replication admits that, H. C. Freeman and George B. Dygert being indebted to the plaintiff, "the defendant executed and delivered to the plaintiff the promissory note, and that the note sued on in this action is a renewal of the said note, as alleged in  *  *  *  the answer." All the other material allegations, both in the special defense and the counterclaims, are denied.

At the trial the defendant testified that the original note had been executed and delivered to plaintiff on January 1, 1901; that at the same time there was executed the agreement referred to in the answer, to which he himself, the Illinois Engraving Company, and the Dwight Bros. Paper Company (Illinois corporations) were the real parties, and that it had been assented to by the plaintiff; that he had then paid to Maley, the agent of the plaintiff and of the other corporations, $1,000 in cash; that the note was thereafter renewed two or three times, the last renewal being the note in controversy; and that the only consideration therefor was a compliance with the terms and provisions of the agreement. Upon being then asked by his counsel whether he had been permitted, after the execution of the agreement, to use the claims referred to therein as his own, or whether the other parties to it had used them, he was not permitted to answer. The objection to the evidence sought to be elicited by this inquiry and one put to him immediately afterward, seeking to bring out the same evidence, was that it was irrelevant and immaterial, and tended to vary the terms of the written agreement. Counsel then offered in evidence a copy of the agreement. Upon objection that it was not relevant to any of the issues in the case, in that it did not appear to be a writing obligatory in any wise binding upon the plaintiff, it was excluded. The writing is as follows:

"This agreement made and entered into this thirty-first day of January, 1901, by and between the Illinois Engraving Company and the Dwight Bros. Paper Company, corporations duly

organized and existing under and by virtue of the laws of the state of Illinois, and G. O. Freeman, of Helena, Montana:

"Whereas, the above-named corporations have heretofore commenced actions in the circuit court of Cook county, state of Illinois, against H. C. Freeman and George B. Dygert for the recovery of certain moneys, in which said action 7,000 unbound books, designated as 'Butte Above and Below Ground,' together with the electrotypes and engravings and paper stock used in the production of the same, have been attached and are now in the hands of the proper officers of said Cook county, state of Illinois, which said actions are now pending; and

"Whereas, the said G. O. Freeman has this day paid to the said corporations and the Henry O. Shepard Co., the sum of one thousand dollars, and executed and delivered his notes in the sum of fifteen hundred thirty and 71-100 dollars, in full payment of the amount so due to said corporations and the Henry O. Shepard Co.;

"Now, therefore, this agreement, witnesseth: That the said corporations hereby sell, assign, transfer, and set over unto the said G. O. Freeman, all and singular the said accounts, together with all contracts and agreements together with the drafts accompanying the same turned over and delivered to them by the said H. C. Freeman and Geo. B. Dygert as security for the payment of the indebtedness so sued on as aforesaid, together with all the rights, privileges and benefits resulting or which may result from the prosecution of said actions.

"And the said corporations hereby agree to prosecute said actions aforesaid, together with such other actions as may be necessary to make the same effective for the protection of the said G. O. Freeman, including the prosecution of an action in the county of Silver Bow, state of Montana, in the event the same may be necessary, the same as if said corporations were protecting their own interests and this assignment and agreement had not been made, however at the expense of said G. O. Freeman.

"And it is further agreed that in the event of a successful prosecution of said actions, the said corporations will either

assign and transfer the judgments obtained therein to the said G. O. Freeman, or purchase the property now covered by attachment, under any sale which may be had in said actions, and turn the same over to the said G. O. Freeman as his property without any other and further consideration, as the said G. O. Freeman may direct.

"Witness our hands this 31st day of January, 1901.

"Dwight Bros. Paper Co.,
"By H. C. Maley,
"Atty. in Fact.
"Illinois Engraving Co.,
"By H. C. Maley,
"Secy. and Treas.
"G. O. Freeman.

"We hereby consent to the above contract.
"The Henry O. Shepard Co.,
"By H. C. Maley,
"Atty. in Fact."

Evidence was then offered to show that the parties signing the agreement, other than defendant, had failed to comply with its stipulations on their part. Four letters received by the defendant from the president of the plaintiff and from its attorney, touching the progress of the actions instituted against Freeman and Dygert by the other corporations, were also offered. From three of these, all written during May and June, 1901, it appeared that the amount of the claim of the plaintiff company was originally $1,159.40; that the property mentioned in the agreement was in the hands of the plaintiff as garnishee in the actions against H. C. Freeman and Dygert at the time the note was executed for this amount; that as early as May 29, 1901, judgments had been entered in favor of the plaintiffs in the actions by the other corporations against Freeman and Dygert; and that the sheriff had been authorized to take the property and sell it subject to plaintiff's right to be first paid out of the proceeds. They also contained assurances that the rights of all the parties would be protected. From the other letter, written in December, 1901, it appeared that the plaintiff had re-

ceived no part of the cash payment of $1,000, but that the whole amount had been appropriated by the other corporations through their agent, Maley. Claim was made then for the first time that the plaintiff should have received its proportionate share of it. All this evidence was, upon objection, excluded, except the letter last mentioned, on the ground that it was irrelevant. On cross-examination the defendant stated that, at the time the agreement was made, he had executed two notes, one directly to the plaintiff and the other to the other corporations. He did not remember what amount of interest had been included at the time of the renewals of the note executed to the plaintiff, nor was he able to account for $182.75, the difference between the amount of the renewal note and the amount of the original with legal interest to the date of renewal. He stated that he had no recollection whatever as to how this difference arose.

No other evidence being offered or introduced, the plaintiff moved for nonsuit upon both of the defendant's counterclaims. This motion was sustained. Thereupon the plaintiff requested the court to direct a verdict for plaintiff for the amount demanded in its complaint. This motion was also sustained. The amount of the verdict was $2,055.35, the principal of the note, together with interest from August 13, 1901. In entering the judgment, for some reason not apparent, the sum of $270 was added to this sum as interest, thus making the amount of the judgment to this extent in excess of the verdict. The appeal is from the judgment.

It is apparent that both counterclaims alleged in the answer seek recovery of the same sum, to-wit, the sum of $1,000 paid by defendant at the time the agreement was made, and that recovery under either would depend upon proof of the same facts. For present purposes, we shall assume that sufficient facts are stated in the special defense to constitute a bar to a recovery by plaintiff, and that there is a sufficient statement in one or both of the counterclaims to support a judgment for defendant. For convenience in determining the ultimate question submitted for decision, to-wit, whether the action of the

district court in nonsuiting the defendant and directing a verdict for plaintiff, was correct, we shall consider the case as if all the evidence offered had been admitted. This will enable us to construe the agreement in the light of the facts surrounding its execution, in so far as they appear, and thus to ascertain the purpose the defendant and the other formal parties to it had in view. The evidence as to the attendant circumstances is meager; but it is apparent that at the time the agreement was made certain property owned by Freeman and Dygert was in the hands of the plaintiff, subject to a lien of some kind in its favor as security for the indebtedness due to it from them, amounting to $1,159.40. Freeman and Dygert were also indebted to the Illinois Engraving Company and the Dwight Bros. Paper Company in amounts not shown. They had instituted actions against Freeman and Dygert to recover judgments for these debts, for the satisfaction of which they were looking to the property in the hands of the plaintiff. They therefore negotiated the agreement with defendant with the clearly apparent purpose of permitting him to substitute himself in place of Freeman and Dygert as their debtor, and at the same time of vesting him with the title to their claim as assignee, so that by this means he could finally, so far as they were concerned, acquire clear title to the property in the hands of the plaintiff. To accomplish this end, they assigned their respective claims to defendant, upon his payment of $1,000 in cash and executing to them a promissory note for the balance of their claims, and in full payment thereof. They further agreed to prosecute the claims to judgment at his expense, and either to transfer the judgments to defendant or to buy the property at execution sale under them, and deliver it to the defendant as he might direct. In order that they might be free to accomplish fully the purpose in view, the defendant paid off and discharged the indebtedness due to plaintiff by executing to it his promissory note for the full amount due to it from Freeman and Dygert. The cash payment, though made to the agent of all the creditors, was treated by him and the Illinois Engraving Company and the Dwight Bros. Paper Company as made for the exclusive benefit of

these companies, and as a discharge *pro tanto* of the indebtedness due them.  Whether this was the purpose is not made entirely clear by the evidence, but that it was may be presumed from the fact that the plaintiff accepted the note executed to it for the full amount of its claim and in full payment of it, and at that time asserted no right to any portion of the cash.  The efficient and operative parts of the agreement cast the obligations embodied therein upon the Illinois Engraving Company and the Dwight Bros. Paper Company, but they can have no such force so far as the plaintiff is concerned.

Though it is mentioned in the recitals, the language of the agreement does not, under the most liberal construction, purport to bind it to the performance of any obligation; and it cannot be construed to be a transfer of the claim due to it from Freeman and Dygert, nor to recite an agreement to transfer it, nor to prosecute it to judgment, nor to sell the property, nor to buy it in and deliver it to the defendant.  Nor does its language permit the conclusion that it assented to be bound as a surety to see that the other corporations performed their obligations under it.  The most that can be said that it undertook to do by attaching its written consent to it, is that it agreed in consideration of the payment to it in full of its claim against Freeman and Dygert, by the defendant, that it would not thereafter assert such an adverse interest in the subject matter of the agreement, nor assume such an attitude toward it, as to obstruct the parties in accomplishing its purpose.  It had the property in its possession.  Its claim was apparently secured.  Whether the other creditors could or could not collect their claims did not concern it.  Under these circumstances, it was necessary that they and the defendant should have its consent, in order that they might accomplish the purpose of the arrangement effected by them, and, to obtain it, the defendant assumed the indebtedness due it from Freeman and Dygert.  In attaching its signature, expressing at the same time its purpose in doing so, it assumed no other obligation than that of refraining from obstructing the parties efficiently bound from accomplishing their purpose.

A party may, under certain circumstances, bind himself to the performance of the obligations of a contract, even though he may not be mentioned in it. For illustration: Where a party, though not mentioned in an agreement to deliver property, signed it as such, it was held that he intended to bind himself jointly with the actual party. (*Clark* v. *Rawson,* 2 Denio (N. Y.), 135.) So, where several persons signed a promissory note by the express terms of which the promisor alone was bound, the signatures of the former were held to indicate an intent on their part to be bound as sureties and joint and several promisors with the plaintiff. (*Parks* v. *Brinkerhoff,* 2 Hill (N. Y.), 663.) One who signed an appeal bond was held to manifest his intention to be bound, though he was not mentioned in the body of the instrument. (*Ex parte Fulton,* 7 Cow. (N. Y.) 483.) This rule has been recognized and applied by other courts. (*Williams* v. *Greer's Admrs.,* 4 Hayw. (Tenn.) 235; *Ahrend* v. *Odiorne,* 125 Mass. 50, 28 Am. Rep. 199; *Danker* v. *Atwood,* 119 Mass. 146.) But where there is nothing in the agreement showing any consideration affecting such a party, or inducing him to become a party, or showing such relations to either of the actual parties as would lead to the inference that he intended to become surety for, or joint promisor with, one rather than the other, he is *prima facie* not bound. Nor may parol evidence be resorted to to furnish the basis of an inference one way or the other. (*Blackmer* v. *Davis,* 128 Mass. 538.)

In *Lancaster* v. *Roberts,* 144 Ill. 213, 33 N. E. 27, certain persons not mentioned in the body of a contract for the sale of land, which purported to bind the promisor and promisee only, signed it generally as though they were in fact parties. The court in determining the liability of these parties, under the particular circumstances, said: "But we have been referred to no authority which discusses the effect of merely signing a deed or contract where the relation of husband and wife does not exist between the grantor or party named in the instrument, and the party signing the same, but not named therein. It would

seem, however, upon reason and principle, that where a third person merely annexes his name to a contract which in the body of it does not mention him, and which is in itself a complete contract between other parties who sign it and are mentioned in it, such third person does not thereby become a party to the efficient and operative parts of the contract. His signature in such case can only be regarded as an expression of his assent to the act of the parties in making the contract, and may perhaps operate as an estoppel against his assertion in the future of an adverse interest in the subject-matter of the agreement." *A fortiori,* a party who in such case writes before his signature a memorandum, indicating, not the intent to become generally bound by the stipulations in the contract, but the clear intention to give his mere consent that the parties who are bound by their express engagements may fulfill them, cannot justly be held beyond his engagement so expressed. To hold otherwise would be violative of the canons of interpretation laid down by the statute. (Revised Codes, secs. 5026, 5027, 5028, 5032, 7873.)

The consideration passing to the plaintiff was the payment of its debt by defendant. On its part, being in possession of the property and having the exclusive right to subject it to the satisfaction of its debt, it consented that the other creditors might arrange among themselves with defendant for the pursuit of such a course with reference to it that they could secure the payment of their claims, and at the same time realize out of it funds sufficient to discharge the note due to plaintiff, with the final result that defendant would secure the property for himself. If the contract does not mean this, it has no meaning. The plaintiff did not agree that, in case it failed of its purpose, it would cancel and surrender defendant's note, nor do anything else than to refrain from obstructing the accomplishment of the purpose sought. The property went into the hands of the sheriff for sale. It does not appear what the result was, but, whatever it was, it is not alleged, nor does it appear from any evidence admitted or offered, that the plaintiff was responsible for it. In the formulation of his defenses in his answer,

the defendant therefore proceeded under a mistaken notion of his rights as against the plaintiff, and alleged, as against it, breaches of the agreement for which the actual parties to it, other than himself, were solely responsible. While it may be that the course of conduct pursued by the plaintiff prevented the accomplishment of the purpose sought by the agreement, the fact, if such were the fact, is not alleged, nor does the evidence offered tend to establish it.

We are of the opinion that there is no merit in defendant's contention. It is apparent from the record, however, that judgment was entered for $270 more than was justified by the verdict. The error, as appears from the statement of facts, occurred through the mistake of someone in calculating interest upon the amount of the verdict found by the jury, whereas such interest should not have been included. It is directed that the judgment be modified by striking out this interest, and that. as modified, it be affirmed. Each party will pay all costs incurred on his or its own behalf on the appeal.

*Modified and affirmed.*

MR. JUSTICE SMITH and MR. JUSTICE HOLLOWAY concur.