IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 4, 2023

## JULIE DANIELSON v. KIMBERLY ARMSTRONG

**Appeal from the Circuit Court for Davidson County**
**No. 22C311   Amanda Jane McClendon, Judge**

_____

### No. M2022-01725-COA-R3-CV

_____

This appeal concerns the validity and enforceability of an oral loan agreement between former business partners. As discussed herein, we discern no error in the trial court's enforcement of the parties' agreement. As such, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which ANDY D. BENNETT and KRISTI M. DAVIS, JJ., joined.

Matthew Crigger, Brentwood, Tennessee, for the appellant, Kimberly Armstrong.

Mark Freeman, Katherine Haggard, and Kristen J. Johnson, Nashville, Tennessee, for the appellee, Julie Danielson.

## OPINION

### BACKGROUND AND PROCEDURAL HISTORY

This case arises from a dispute between two former business partners, Appellee Julie Danielson and Appellant Kimberly Armstrong, and concerns whether they entered into a binding loan agreement. Ms. Danielson and Ms. Armstrong met through a mutual friend in 2018 and soon learned of their mutual passion for promoting the empowerment of women. Soon thereafter, the two formed a limited liability company named Crown Enterprises, LLC ("Crown Enterprises"), which provided workshops and other events aimed at the empowerment of women. According to Ms. Danielson, Ms. Armstrong became indebted to her in connection with the funding of their new business, and she eventually brought suit against Ms. Armstrong in the Davidson County General Sessions Court. After a judgment in the amount of $24,999.99 was rendered against Ms. Armstrong by that court in Ms.

Danielson's favor, the case was appealed to the Davidson County Circuit Court ("the trial court").

In the trial court, Ms. Danielson testified that she and Ms. Armstrong agreed to be equal partners in their business venture but that Ms. Armstrong lacked the funds to make an equal capital contribution. Central to this appeal, Ms. Danielson alleged that she loaned Ms. Armstrong $26,000.00 so the two could match each other's respective capital contributions. As supporting evidence for her assertion that the parties had entered into a loan agreement, Ms. Danielson produced an email sent from Ms. Armstrong on August 11, 2020, which stated in pertinent part as follows: "My intent is to return your $26K, however, you must think I'm a magician if I can be in the spot we were/are both in 4 months ago and suddenly produce an extra $500/month to pay you back starting in September. I understand your frustration[.] . . . I also already said to you that I would pay you back, and that first I have to get myself covered financially for my own survival. That makes sense to you, surely?"

Conversely, Ms. Armstrong contended that Ms. Danielson never loaned her any amount of money and that all of Ms. Danielson's funds were directly invested by her into the parties' venture, Crown Enterprises. Ms. Armstrong further argued that her email did not represent evidence of a previous oral loan agreement with Ms. Danielson; rather, Ms. Armstrong alleged that the email merely reflected an intention to return $26,000.00 because she felt bad that Ms. Danielson had lost a considerable amount of money upon the failure of the business. According to Ms. Armstrong, her email merely represented a gratuitous promise.

In its final order, the trial court found that the parties had, in fact, agreed that Ms. Danielson would loan $26,000.00 to Ms. Armstrong so that Ms. Armstrong could make an equal capital contribution to Crown Enterprises. Furthermore, the trial court found that the aforementioned email supported the existence of a previous oral loan agreement between the two parties for the $26,000.00, and as a result, the court entered a judgment against Ms. Armstrong.[1]

This appeal followed.

**ISSUES PRESENTED**

In connection with this appeal, Ms. Armstrong raises two issues for review, restated as follows:

---

[1] The judgment was limited to $24,999.99, however, because Ms. Danielson did not increase her claim from the jurisdictional amount available in the general sessions court to the total amount owed in the trial court.

I.     Whether the trial court erred in awarding a judgment to Ms. Danielson when the evidence did not support a finding that she loaned money and there was no consideration for a gratuitous promise to pay after the parties' business venture failed.

II.    Whether the trial court should have found that the alleged contract was barred by the statute of frauds because, allegedly, "the debt was owed by a business and there was not a sufficient writing for an agreement of the defendant to assume the debt."

## STANDARD OF REVIEW

Contract formation and interpretation are questions of law and are therefore not accorded a presumption of correctness under Rule 13 of the Tennessee Rules of Appellate Procedure. *ICG Link, Inc. v. Steen*, 363 S.W.3d 533, 543 (Tenn. Ct. App. 2011). Findings of fact made by a trial court are reviewed de novo, with a presumption of correctness unless the evidence preponderates against them. Tenn. R. App. P. 13(d).

## DISCUSSION

*Existence of the Loan Agreement and Ms. Armstrong's Issue Concerning Consideration*

When assessing the elements of an alleged agreement, the trial court may consider a party's words, as well as associated acts, circumstances, and conduct. *See Clark v. Givens*, No. M2022-00341-COA-R3-CV, 2023 WL 7212225 at *7 (Tenn. Ct. App. Nov. 2, 2023). Here, Ms. Danielson alleged that the loan agreement underlying the $26,000.00 at issue was made orally between her and Ms. Armstrong. Since the agreement was not in writing, the trial court, as factfinder, assessed the parties' testimony in tandem with several exhibits, namely Crown Enterprises' financial information, texts between the parties, and an email from Ms. Armstrong to Ms. Danielson. Upon considering such evidence, the trial court made the following findings, among others:

> The parties agreed that Ms. Danielson would personally loan $26,000 to Ms. Armstrong so that Ms. Armstrong could make a capital contribution to Crown Enterprises, LLC. . . . [T]here was evidence to support this agreement in the form of an email from Ms. Armstrong to Ms. Danielson confirming the debt obligation and Ms. Armstrong's promise to repay the $26,000.

On appeal, Ms. Armstrong contends that the email submitted at trial does not evidence an enforceable and valid contract because it is a gratuitous promise, lacking consideration. In support of her argument, she cites to *Allman v. Boner*, No. 01A01-9306-CH-00270, 1993 WL 541111 (Tenn. Ct. App. Dec. 29, 1993), arguing the facts are analogous to the present appeal.

- 3 -

In *Allman*, the plaintiff donated $1,000.00 to the defendant's political campaign. Subsequently, the defendant decided to cease the political campaign and circulated a letter to donors, offering to return a portion of their donation. *Id.* at *1. As per instructions contained in the defendant's letter, the plaintiff mailed a formal request in writing for the return of his donation but never received it. *Id.* The plaintiff filed suit, and the trial court ultimately granted summary judgment in favor of the defendant. *Id.* On appeal, this Court affirmed the trial court's judgment, reasoning that the defendant's offer to return a portion of the plaintiff's donation was a gratuitous promise and therefore lacked consideration. *Id.* at *2-3. In discussing the nature of a gratuitous promise, we stated that, "when one receives a naked promise and such a promise is broken, he is not worse off than he was; he gave nothing for it, he has lost nothing by it, and on its breach he has suffered no damage cognizable by courts." *Id.* at *2 (quoting 17A Am. Jur. 2d Contracts § 114 (1991)).

Upon our review of the record in this case, we conclude that the circumstances underpinning this appeal are not analogous to *Allman*. Here, the trial court found that Ms. Danielson loaned, rather than donated, $26,000.00 to Ms. Armstrong. As discussed earlier, Ms. Danielson testified that she loaned Ms. Armstrong $26,000.00 so the two could match each other's respective capital contributions to their new business. Moreover, Ms. Armstrong's argument concerning the disputed email appears to mischaracterize the trial court's findings concerning the email. Although Ms. Armstrong's briefing appears to treat the email as the moment of contract formation, the trial court's findings state "[t]hat there was evidence to support this agreement in the form of an email." In other words, Ms. Armstrong's email stating her intent to return the $26,000.00 was simply evidence of Ms. Armstrong's previous oral agreement to repay Ms. Danielson's loan offer. Indeed, as we construe the order, the trial court accredited Ms. Danielson's testimony concerning the parties' previous oral loan agreement, referring to the email as evidence that confirmed a debt obligation that already existed. Inasmuch as the trial court is better positioned than this Court to assess the credibility of witnesses, we discern no error with the trial court's determination that the parties entered into a loan agreement. It is without question that the record on appeal contains testimony from Ms. Danielson that she had orally agreed to loan money and that Ms. Armstrong had orally agreed to pay her back.[2]

*Statute of Frauds*

In addition to her raised concerns pertaining to whether a loan agreement was reached, Ms. Armstrong alternatively argues that Ms. Danielson's claim against her is barred by Tennessee Code Annotated section 29-2-101(a)(2), which is broadly referred to

---

[2] We specifically note this in light of Ms. Armstrong's statement in her brief that Ms. Danielson supposedly admitted at trial that she was relying solely on the email as a basis for repayment. Clearly, this is inaccurate. Ms. Danielson's case-in-chief was supported by sworn testimony, not just the email in question.

- 4 -

as the Statute of Frauds. This provision specifically provides as follows:

> (a) No action shall be brought:
>
> . . . .
>
> (2) To charge the defendant upon any special promise to answer for the debt, default, or miscarriage of another person;
>
> . . . .
>
> unless, the promise or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith . . . .

Tenn. Code Ann. § 29-2-101(a)(2, 5). The Tennessee Supreme Court has characterized the type of transaction contemplated in section 29-2-101(a)(2), stating, "[t]here can be no doubt that this provision of the statute applies to an alleged contract of guaranty." *In re Dickerson's Est.*, 600 S.W.2d 714, 716 (Tenn. 1980). In assessing whether an agreement is included within the Statute of Frauds, we look to "the intentions of the parties at the precise moment the contract was made." *In re Est. of Reed*, No. E2015-02372-COA-R3-CV, 2016 WL 4443699 at *3 (Tenn. Ct. App. Aug. 22, 2016).

In this case, Ms. Armstrong argues that the loan of $26,000.00 is a debt belonging to Crown Enterprises and that, in turn, Ms. Danielson is actually holding her liable for another's debt. She further contends that the email sent to Ms. Danielson does not constitute a memorandum under Tennessee Code Annotated section 29-2-101, as the promise contained therein is gratuitous and the email is unsigned.

We discern no error with respect to Ms. Armstrong's contention regarding Tennessee Code Annotated section 29-2-101(a)(2) because Ms. Danielson is not seeking to charge Ms. Armstrong with any debt owed to her by Crown Enterprises. What was at issue in this case, per the trial court's findings, was a loan between the parties to this appeal. Indeed, as discussed previously in this Opinion, the parties agreed Ms. Danielson would loan Ms. Armstrong $26,000.00 so Ms. Armstrong could be an equal partner in Crown Enterprises. As further argued by Ms. Danielson in her appellate brief: "[T]his was not an agreement to answer the debt of a third party. This was an agreement between two individuals." We conclude that this is an accurate assessment based on the trial court's findings. Because Ms. Danielson was not charging Ms. Armstrong with the debt of another, we reject Ms. Armstrong's contention that Tennessee Code Annotated section 29-2-101(a)(2) bars the enforceability of the loan agreement at issue.

**CONCLUSION**

For the foregoing reasons, the judgment of the trial court is affirmed.


           s/ Arnold B. Goldin

           ARNOLD B. GOLDIN, JUDGE

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE

## JULIE DANIELSON v. KIMBERLY ARMSTRONG

**Circuit Court for Davidson County**
**No. 22C311**

_____

**No. M2022-01725-COA-R3-CV**

_____

## ORDER

On December 21, 2023, this Court issued a Memorandum Opinion dismissing this appeal due to the Appellant's failure to comply with briefing requirements in the Tennessee Rules of Appellate Procedure and the Rules of the Court of Appeals of Tennessee. In pertinent part, the Memorandum Opinion observed that the argument section of the Appellant's brief did not include any citations to the record in support of her argument.

The Appellant has since filed a timely and respectful petition for rehearing asking that this appeal be heard on its merits, wherein her counsel acknowledges the briefing deficiencies that existed but also notes that the issue has "now been remedied" and indicates that "appropriate citations" have been added to the brief. Her counsel has also supplied a declaration noting that he was "attaching the corrected brief."

In light of our desire to resolve cases on the merits if possible, and in light of the Appellant's efforts in this case to submit a corrected appellate brief to this Court, we conclude that it is in the interests of justice that our prior Memorandum Opinion of December 21, 2023, be vacated, and that the appeal proceed to further adjudication. Accordingly, we hereby GRANT the petition for rehearing and vacate our December 21, 2023, Memorandum Opinion. Pursuant to this Order, the Clerk of this Court is directed to file the corrected brief—that was lodged and attached to the petition for rehearing—as the Appellant's amended brief in this cause. The appeal will thereafter proceed to an adjudication based on that submission, the Appellee's brief, and the record that has been transmitted to us on appeal. IT IS SO ORDERED.

PER CURIAM